IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs September 25, 2002

**STATE OF TENNESSEE v. TYLER WARD ENIX**

**Appeal from the Circuit Court for Blount County**
**Nos. C-13354, C-13355     D. Kelly Thomas, Jr., Judge**

---

**No. E2001-03111-CCA-R3-CD**

---

The defendant, Tyler Ward Enix, appeals from the Blount County Circuit Court's revoking his probation that was ordered for his sentences for harassing and stalking his estranged wife. The defendant contends that although he violated his probation, the trial court erred in sentencing him to confinement. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JOSEPH M. TIPTON, J., delivered the opinion of the court, in which DAVID H. WELLES and ALAN E. GLENN, JJ., joined.

Raymond Mack Garner, District Public Defender, for the appellant, Tyler Ward Enix.

Paul G. Summers, Attorney General and Reporter; Peter M. Coughlan, Assistant Attorney General; Michael L. Flynn, District Attorney General; and Ellen Lee Berez, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

On July 9, 2001, the defendant pled guilty to harassing and stalking Allison Enix, both Class A misdemeanors. For the harassment conviction, the trial court sentenced him to eleven months, twenty-nine days with forty days in jail and the remainder on probation. For the stalking conviction, the trial court sentenced him to a consecutive sentence of eleven months, twenty-nine days on probation. On August 22, 2001, a probation violation warrant was issued against the defendant, alleging that he had violated his probation by having contact with the victim and violating his curfew.

At the probation revocation hearing, Allison Enix testified that while the defendant was serving forty days in jail for harassing and stalking her, she sent him cards and pictures of their young daughter. She said the defendant sent her a letter from jail saying that he was going to change. She said that the day the defendant got out of jail, he telephoned her and asked to see their daughter.

She said that the next day, she and her daughter met the defendant at Cancun Restaurant in Knoxville. She said that when they went inside the restaurant, the defendant asked her if she was going to go through with a divorce. She said that she told the defendant yes and that he became angry and asked her how she could destroy their family. She said she took their daughter and left the restaurant.

The victim testified that about a week later, she was getting ready to take her daughter to the Alcoa swimming pool when the defendant telephoned her. She said she told the defendant that she was taking their daughter to the pool. She said that while she and her daughter were at the pool, the defendant unexpectedly arrived and got into the pool with them. She said she took her daughter out of the swimming pool, gathered their belongings, and went to her car. She said the defendant got into her car and asked her if she was going to go through with the divorce. She said the defendant told her that if she did, then "he had plans for me." She said she took the defendant's statement as a threat and was scared. She said that when she tried to leave the pool parking lot, the defendant blocked her car with his truck. She said the defendant got out of the truck, walked to her car, and started talking to her. She said she told the defendant, "Please just let us go." She said the defendant got back into his truck and left.

The victim testified that after the swimming pool incident, the defendant started telephoning her at work twenty to thirty times a day. She said he also called her home in the middle of the night and threatened her. She said that several times, she called the police and took her daughter to a safe place. She said that while the defendant was on probation, she filed several warrants against him for harassment. She said that on October 1, 2001, the defendant was arrested and put back in jail for violating his probation.

On cross-examination, the victim acknowledged that the trial court had ordered her not to contact the defendant. She acknowledged that despite the order, she sent letters to him while he was serving his forty-day jail sentence. She also acknowledged that while the defendant was in jail, she may have talked to him about reconciling. She denied going anywhere other than Cancun Restaurant with the defendant and acknowledged that her problems with the defendant did not develop until the incident at the Alcoa swimming pool. She denied going to Court South, a health club, with him.

Jacqueline Vaughn, the victim's best friend, testified that the defendant sent her two letters while he was in jail for violating his probation. She said the defendant intended for her to give the letters to the victim. She said, though, she did not give them to the victim because she did not want to upset her. She said that about two weeks before the probation revocation hearing, the victim found out about the letters and that she gave them to her. Ms. Vaughn read the letters into evidence. In the first letter, postmarked November 26, 2001, the defendant spoke directly to the victim, saying, "I've never met a person as evil as you. [Our daughter] will understand when she is older. I have learned from this and won't let it happen again." In the second letter, which Ms. Vaughn received about December 5, 2001, the defendant stated, "Let Allison know about this stuff. . . . Just remember how many times she's lied to you and gone behind your back."

-2-

The state introduced into evidence a transcript of the defendant's December 3, 2001 bond hearing and pointed out to the trial court that at the hearing, the defendant stated he worked for United Parcel Service (UPS). The state then called Allen Steel, a security representative for UPS, to testify at the probation revocation hearing that the defendant had been fired from UPS on October 4, 2001. He said that before firing the defendant, UPS sent the defendant a letter warning him that he was going to be fired on October 4 if he did not return to work. He said the defendant never contacted UPS.

The defendant testified that he pled guilty to harassing and stalking the victim in July 2001. He said he served forty days in jail and was released on probation on July 29, 2001. He said that while he was in jail, he received about eight letters from the victim and that when he got out of jail, his father told him that the victim wanted to know why the defendant had not telephoned her. He said that on July 30, he met the victim and their daughter at Cancun Restaurant. He said that after they ate dinner, the three of them went to the park. He said that over the next few days, he met the victim at Burger King and Buddy's Barbecue and that they talked on the telephone. He said he knew he was not supposed to have contact with the victim.

The defendant testified that one week after he got out of jail, the victim telephoned him and asked him to take her and their daughter swimming. He said that he met the victim and their daughter at Court South and that they swam in the club's pool for about three hours. He said that he and the victim argued and that she took their daughter and left. He said he did not block the victim's car with his truck and had never been to the Alcoa swimming pool. He said that after the incident at Court South, he continued to telephone the victim even though she had told him not to call her.

The defendant testified that he was arrested on October 1, 2001, for violating his probation. He said that when he testified at the bond hearing that he worked for UPS, he did not know that UPS had fired him. He said that when he got out of jail, he was going to live with his mother in Powell, Tennessee and try to get his job back at UPS. He said that he was angry with the victim for keeping him away from his daughter and that he was not thinking when he telephoned her.

On cross-examination, the defendant testified that in April 2001, he began receiving counseling for depression and stress and that he continued to receive counseling until he was arrested on October 1. He said he also was taking medication for depression and attention deficit hyperactivity disorder (ADHD). He acknowledged that despite the counseling and medication, he made threatening telephone calls to the victim while he was on probation. He said he did not receive a letter from UPS terminating his employment.

Mary and Bill Enix, the defendant's parents, testified that the victim telephoned the defendant as soon as the defendant finished serving his forty-day jail sentence. On cross-examination, the defendant's father stated that he told the prosecutor over the telephone that the defendant sometimes got confused between the truth and a lie.

The trial court determined that the defendant was in "extreme violation" of his probation. In determining that the defendant had violated the terms of his probation, the trial court considered audiotapes of threatening telephone calls that the defendant had made to the victim and that had been introduced at the defendant's December 3 bond hearing. The trial court noted that the defendant knew he was not supposed to have contact with the victim when he telephoned her. It also noted that the defendant continued to harass the victim despite the fact that he had served forty days in jail and received counseling. The trial court revoked the defendant's probation and ordered that he serve the remainder of his sentences in confinement.

The defendant claims that the trial court erred in ordering him to serve the remainder of his sentences in incarceration. Specifically, he contends that incarceration is not justified in this case because many of his contacts with the victim were consensual and because he had been diagnosed with ADHD and depression. The state contends that the trial court properly revoked the defendant's probation and ordered him to serve his sentences in confinement. We agree with the state.

A trial court may revoke probation upon finding by a preponderance of the evidence that the defendant has violated a condition of probation. Tenn. Code Ann. §§ 40-35-310, -311(e). The decision to revoke probation is within the sound discretion of the trial court, and its judgment will be reversed only upon a showing of an abuse of discretion, reflected in the record by an absence of substantial evidence to support the trial court's findings. State v. Gregory, 946 S.W.2d 829, 832 (Tenn. Crim. App. 1997) (citation omitted).

In this case, the defendant admitted violating the terms of his probation by having contact with the victim. Whether consensual or not, he repeatedly met with or telephoned her despite knowing that the terms of his probation prohibited it. We do not believe he has demonstrated that the trial court abused its discretion by ordering him to serve the remainder of his sentences in incarceration. To the contrary, his repeatedly threatening the victim and flagrantly disregarding this condition of his probation support the trial court's decision. The judgment of the trial court is affirmed.

_____
JOSEPH M. TIPTON, JUDGE